YVONNE BASON, WIDOW OF DOUGLAS BASON, DECEASED, EMPLOYEE, PLAINTIFF
v. KRAFT FOOD SERVICE, INC., EMPLOYER; HARTFORD ACCIDENT AND
INDEMNITY COMPANY, INC., CARRIER; DEFENDANTS

No. COA99-1181

(Filed 19 September 2000)

**Workers' Compensation— injury by accident—delivery driver
found dead—heart attack—presumption that death work
related—rebuttal**

The findings of fact in a workers' compensation action arising
from the death of a delivery driver support the conclusions that
decedent did not sustain an injury by accident and that defend-
ant-employer successfully rebutted the presumption that death
within the course of employment was work related. Decedent's
death was caused by cardiac arrhythmia; there was nothing
unusual about his route, his hours, or the type or amount of
the deliveries, and being called into work as a substitute driver
was a normal activity.

Appeal by plaintiff from opinion and award filed 2 July 1999 by
the North Carolina Industrial Commission. Heard in the Court of
Appeals 15 August 2000.

*Gray, Newell, Johnson & Blackmon, LLP, by Angela Newell
Gray and S. Camille Payton, for plaintiff-appellant.*

*Tuggle Duggins & Meschan, P.A., by J. Reed Johnston, Jr., for
defendant-appellee.*

GREENE, Judge.

Yvonne Bason (Plaintiff), widow of Douglas Bason, deceased,
appeals an opinion and award of the Full Commission of the North
Carolina Industrial Commission (Full Commission) filed on 2 July
1999, in favor of Kraft Food Services, Inc. (Defendant).

The evidence shows that in February of 1994, Douglas Bason
(Decedent) was working as a delivery driver for Defendant, where he
had been employed for approximately twenty-two years. As part of
his employment duties, Decedent delivered items such as frozen
foods and dry goods to various companies. At a delivery location,
Decedent would use a hand truck to unload delivery orders from his
delivery truck. Although Decedent had an assigned route, he also

worked as a substitute driver for other routes when the drivers of the other routes were either ill or on vacation. On days that Decedent was "on call" as a substitute driver, he would receive a telephone call from a supervisor if he was needed to drive another driver's route.

At approximately 6:50 a.m. on the morning of 22 February 1994, Decedent received a telephone call at home from one of his supervisors. The supervisor notified Decedent he was needed as a substitute driver for the High Point/Thomasville route. Decedent therefore reported to work, and at approximately 7:30 a.m. he began driving the High Point/Thomasville route. Brad Thomas (Thomas), a supervisor at Defendant, testified the regularly scheduled "time out" for this route was 4:30 a.m.; however, a substitute driver would not be expected to make deliveries according to the regular schedule because it would be difficult after starting the route behind schedule to get back on schedule. Thomas stated the High Point/Thomasville route did not have more stops than other routes and the deliveries did not weigh more than deliveries on other routes. Decedent had never complained to Thomas about the High Point/Thomasville route being more difficult than other routes.

Thomas testified that on the evening of 22 February 1994, he was notified by an employee of Defendant that Decedent had not returned to Defendant's depot with the delivery truck. Thomas, therefore, notified Decedent's wife and local law enforcement agencies that Decedent was missing. The following day, Decedent's body was found in his delivery truck, which was parked behind a building where Decedent had been scheduled to make a delivery.

Deborah L. Radisch, M.D. (Dr. Radisch), testified in her deposition that she was present at Decedent's autopsy and was familiar with the autopsy report. Dr. Radish testified the autopsy revealed Decedent suffered from "coronary atherosclerotic disease of a severe nature." This condition, which develops over time, is "commonly referred to as hardening of the arteries." The autopsy also stated Decedent suffered from "atherosclerotic disease of cerebral blood vessels." Cerebral blood vessels "are the blood vessels that actually take blood to and from the brain," and this condition also relates to "hardening of the arteries." The autopsy revealed Decedent's cause of death to be a cardiac arrhythmia caused by "ischemic heart disease," which means the heart is "not getting enough oxygenated blood." Dr. Radisch stated that nothing in the autopsy would indicate Decedent's death was caused by overexertion, and "people who are not exerting

themselves could suddenly die of an arrhythmia as well as people who are exerting themselves." The autopsy also revealed no signs of trauma.

In an opinion and award filed on 30 September 1997, the deputy commissioner of the North Carolina Industrial Commission concluded Plaintiff's claim was not compensable under the North Carolina Workers' Compensation Act. Plaintiff appealed the opinion and award of the deputy commissioner to the Full Commission.

In an opinion and award filed on 2 July 1999, the Full Commission entered findings of fact consistent with the facts stated above, including the following pertinent findings of fact:

> 4. . . . [D]ecedent was not scheduled to work on February 22, 1994, but was "on call.". . . This was a normal activity and something that . . . [D]ecedent had done in a regular manner during his many years of service to . . . [Defendant].

> 5. There was nothing unusual about the route, the hours, or the amount or type of deliveries required of . . . [D]ecedent on [the day of his death].

> . . . .

> 7. . . . The cause of . . . [D]ecedent's death was cardiac arrhythmia, which was a sudden, fatal irregular heart beat, precipitated by the severe ischemic heart disease. . . .

> 8. The autopsy revealed no evidence of trauma . . . .

The Full Commission then made the following pertinent conclusions of law:

> 2. Where circumstances bearing on work-relatedness are unknown and where the death occurs within the course of employment, plaintiff should be able to rely on a presumption that death was work-related and therefore compensable, whether the medical reason for death is known or unknown. *Melton v. City of Rocky Mount*, 118 N.C. App. 249, 254-255 (1995), citing *Pickrell v. Motor Convoy, Inc.*, 322 N.C. 363, 370 (1988). This presumption of compensability then requires the defendant to come forward with some evidence that the death occurred as a result of a non-compensable cause. Otherwise, the plaintiff prevails. *Pickrell*, 322 N.C. at 371. In the presence of sufficient competent evidence that the death was not compensable, the presumption is

successfully rebutted. The Industrial Commission should then find the facts based on all the evidence adduced, drawing such reasonable inferences from the competent, credible, and convincing evidence as may be permissible, the burden of persuasion remaining with the plaintiff. *Id.*

3. In the case at hand, . . . [D]efendant[] ha[s] successfully rebutted the presumption of compensability by presenting competent, credible, and convincing evidence that the cause of . . . [D]ecedent's death was severe heart disease which caused a fatal irregular heartbeat. *Id.* There was no convincing evidence of any unusual or extraordinary exertion by . . . [D]ecedent. See *Bellamy v. Morace Stevedoring Co.*, 258 N.C. 327 (1962). According to the facts adduced from the evidence and reasonable inferences drawn therefrom, . . . [D]ecedent, thus, did not sustain an injury by accident arising out of his employment with . . . [Defendant]. N.C. Gen. Stat. Section 97-2(6).

The Full Commission, therefore, denied Plaintiff's claim.

---

The dispositive issue is whether Defendant rebutted the presumption, under *Pickrell v. Motor Convoy, Inc.*, 322 N.C. 363, 368 S.E.2d 582 (1988), that Decedent sustained an injury by accident and, if so, whether Plaintiff met her burden of proving Decedent sustained an injury by accident.

Plaintiff argues Defendant did not present sufficient evidence to rebut the presumption under *Pickrell* that Decedent sustained an injury by accident. We disagree.

Appellate review of a decision of the Full Commission is limited to whether the record contains competent evidence to support the Full Commission's findings of fact, and whether the findings of fact support the Full Commission's conclusions of law. *Hemric v. Manufacturing Co.*, 54 N.C. App. 314, 316, 283 S.E.2d 436, 437-38 (1981), *disc. review denied*, 304 N.C. 726, 288 S.E.2d 806 (1982).

"In order for a claimant to recover workers' compensation benefits for death, he must prove that death resulted from an injury (1) by accident; (2) arising out of his employment; and (3) in the course of the employment." *Pickrell*, 322 N.C. at 366, 368 S.E.2d at 584. Where the evidence shows an employee died within the course and scope of his employment and there is no evidence regarding whether the cause of death was an injury by accident arising out of employment, the

claimant is entitled to a presumption that the death was a result of an injury by accident arising out of employment. *Id.* at 367-68, 368 S.E.2d at 584-85. Once this presumption is established, the defendant has the burden of producing credible evidence that the death was not accidental or did not arise out of employment. *Id.* at 371, 368 S.E.2d at 586; *Melton v. City of Rocky Mount,* 118 N.C. App. 249, 256, 454 S.E.2d 704, 709 (to rebut presumption the defendant must produce "sufficient, credible evidence that the death is non-compensable"), *disc. review denied,* 340 N.C. 568, 460 S.E.2d 319 (1995). If the defendant meets this burden of production, "the Industrial Commission should find the facts based on all the evidence adduced, taking into account its credibility, and drawing such reasonable inferences from the credible evidence as may be permissible, the burden of persuasion remaining with the claimant." *Pickrell,* 322 N.C. at 371, 368 S.E.2d at 586.

In this case, the Full Commission found Plaintiff was entitled to the presumption under *Pickrell* that Decedent's cause of death was an injury by accident arising out of employment.[1] Defendant, however, presented evidence and the Full Commission found as fact that "[t]here was nothing unusual about the route, the hours, or the amount or type of deliveries required of . . . [D]ecedent" on the day of his death. Defendant also presented evidence and the Full Commission found as fact that "[t]he cause of . . . [D]ecedent's death was cardiac arrhythmia, which was a sudden, fatal irregular heart beat, precipitated by the severe ischemic heart disease," and "[t]he autopsy revealed no evidence of trauma." Plaintiff does not argue these findings of fact are not supported by competent evidence, and we are therefore bound by these findings of fact. *See* N.C.R. App. P. 28(b)(5); *Hemric,* 54 N.C. App. at 316, 283 S.E.2d at 437-38. Further, these findings of fact support the Full Commission's conclusion of law that Defendant "successfully rebutted the presumption of compensability" under *Pickrell. See Cody v. Snider Lumber Co.,* 328 N.C. 67, 71, 399 S.E.2d 104, 106 (1991) (heart attack is not an "accident" within the meaning of the workers' compensation statute when it occurs while the employee is "conducting his work in the usual way" and the heart attack is not caused by *"unusual or extraordinary*

---

1. Defendant argues in its brief to this Court that the *Pickrell* presumption does not apply in this case because "the medical evidence establishes . . . that [Decedent] died of a result of cardiac arrhythmia brought on by ischemic heart disease." The Full Commission, however, concluded the *Pickrell* presumption did apply and, because Defendant did not cross-assign error to this conclusion, Defendant may not now argue before this Court that the Full Commission erred by applying this presumption. *See* N.C.R. App. P. 10(d).

**BASON v. KRAFT FOOD SERV., INC.**

[140 N.C. App. 124 (2000)]

*exertion* or extreme conditions" (citation omitted)). Accordingly, Plaintiff had the burden of proving Decedent's death resulted from an accident.

Plaintiff also argues the evidence shows Decedent's death resulted from an accident because Decedent was not scheduled to work on the day of his death and Decedent started his route on that day at least three hours late, causing Decedent's work to be "unusually strenuous." We disagree.

In this case, the Full Commission made findings of fact that being called into work as a substitute driver "was a normal activity and something that . . . [D]ecedent had done in a regular manner during his many years of service to . . . [Defendant]" and "[t]here was nothing unusual about the route, the hours, or the amount or type of deliveries required of . . . [D]ecedent" on the day of his death. Plaintiff does not argue these findings of fact are not supported by competent evidence, and we are therefore bound by these findings of fact. *See* N.C.R. App. P. 28(b)(5); *Hemric*, 54 N.C. App. at 316, 283 S.E.2d at 437-38. Further, these findings of fact, considered with the Full Commission's findings of fact that "[t]he cause of . . . [D]ecedent's death was cardiac arrhythmia" and "[t]he autopsy revealed no evidence of trauma," support the Full Commission's conclusion of law that Decedent "did not sustain an injury by accident." *See Cody*, 328 N.C. at 71, 399 S.E.2d at 106. Accordingly, the Full Commission properly denied Plaintiff's workers' compensation claim.[2]

Affirmed.

Judges EDMUNDS and SMITH concur.

---

2. Because the Full Commission properly concluded Decedent did not sustain an injury by accident, we need not address the issue of whether the Full Commission properly concluded Decedent's injury did not arise out of employment. *See Pickrell*, 322 N.C. at 366, 368 S.E.2d at 584 (claimant must prove all three elements of workers' compensation claim).